Albert Beasley MARSHALL and Frederick Darnell Marshall *v.* STATE of Arkansas

CA CR 99-418                                         5 S.W.3d 496

Court of Appeals of Arkansas
Division I
Opinion delivered December 8, 1999

*William C. McArthur,* for appellant.

*Mark Pryor,* Att'y Gen., by: *James R. Gowen, Jr.,* Asst. Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. The appellants, Albert Beasley Marshall and Fredrick Darnell Marshall, appeal their convictions for aggravated robbery and theft of property for which each received total sentences of ten years in the Arkansas Department of Correction. Both challenge the sufficiency of the evidence to support their convictions. Albert Marshall also argues that the trial court erred in denying his motion to suppress his custodial statement, made prior to being advised of his *Miranda* rights, regarding his disposal of a weapon. We affirm.

We consider challenges to the sufficiency of the evidence prior to considering other alleged trial errors. *See, e.g., Britt v. State,* 334 Ark. 142, 150, 974 S.W.2d 436, 439 (1998). A person commits the offense of aggravated robbery if, with the purpose of committing a theft, he employs or threatens to immediately employ physical force upon another while armed with a deadly weapon. Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997). A person commits the offense of theft of property when he knowingly takes unauthorized control over the property of another with the purpose of depriving the owner thereof. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 1997). We affirm if there is substantial evidence to support a verdict. *Britt, supra.*

On January 26, 1999, while Bruce Shealey was in the parking lot of the Holiday Inn Select in Little Rock, a man wearing a red jacket grabbed him from behind and stated, "I got a gun in your back. I want your wallet." When Shealey tried to move, the assailant said, "You don't understand. I have a gun. I'll put a hole in your

head." After Shealey saw that he was holding a nine-millimeter or .45 caliber handgun, Shealey gave him his wallet, which contained credit cards. Shealey was released, and he ran between two parked cars. From there, he heard someone say, "Shoot him." About twenty to thirty feet away, Shealey saw a person facing him who was wearing a denim or blue jacket and standing next to a small red truck. Shealey watched his assailant walk toward the red truck. After the truck started toward the parking-lot exit, Shealey ran into the hotel, where he met Officers Steve Woodall and Steve Graves of the Little Rock Police Department. Shealey reported the robbery to the officers and described the two males and their vehicle.

Woodall and Graves immediately left the hotel in their patrol car in pursuit of a small red truck leaving the parking lot with two occupants. Despite the officers' attempt to stop the assailants by activating the police car's blue lights, the truck sped away. Officers Hinman and Colclasure joined the pursuit in another vehicle. The truck eventually crashed into a fence near a wooded area adjacent to Henderson Junior High School, and its occupants fled on foot. Woodall and Graves followed on foot and found Frederick Marshall, who was wearing a blue shirt, in the woods and arrested him.

Twenty-five yards from the truck, Hinman saw Albert Marshall, who was wearing a red coat, and ordered him to the ground at gunpoint. The officers immediately asked, "Where's the gun?" Colclasure handcuffed and searched Albert Marshall, and Marshall stated that he had thrown the gun when he got out of the truck. The officers found an empty holster strapped to his ankle and a box of nine-millimeter jacketed hollowpoints in his left jacket pocket. Woodall searched the appellant's truck and found Shealey's wallet containing the credit cards. The gun was never found.

■ The evidence presented at trial established that after the aggravated robbery and theft of property, one man wearing a red jacket and another wearing some type of blue clothing left in a small red pickup truck. Officers immediately pursued the truck, and after the truck crashed, they pursued the suspects on foot. Both appellants were soon arrested. Albert Marshall was wearing a red jacket, and Fredrick Marshall was wearing a blue shirt. Albert Marshall admitted to throwing a gun away and was found in possession of ammunition and an empty gun holster. The stolen wallet was found in the truck. Based on the foregoing evidence, we

conclude that the trial court did not err in finding that there was substantial evidence to support the appellants' convictions for aggravated robbery and theft of property.

Albert Marshall also argues that his statement regarding his disposal of the weapon should have been suppressed because he was in police custody and had not been informed of his *Miranda* rights at the time he gave the statement. We disagree and conclude that this issue is controlled by *New York v. Quarles*, 467 U.S. 649 (1984).

At the suppression hearing, Officer Maria Colclasure testified that she participated in the pursuit of the red truck involved in the armed robbery at the Holiday Inn Select. After the truck crashed near a wooded area by Henderson Junior High School, the occupants of the truck fled on foot. Colclasure and Officer Hinman apprehended Albert Marshall. While Hinman kept Albert Marshall on the ground at gunpoint, Colclasure handcuffed Albert Marshall and searched him for the weapon that was used during the robbery. Colclasure asked Albert Marshall what he had done with the gun and whether he had the gun on him. Colclasure testified that she asked Albert Marshall these questions for the officers' safety and to ensure that Albert Marshall did not have the weapon on him or in the immediate area. Albert Marshall told Colclasure that he had thrown the gun out of the truck window just before they crashed. Colclasure further testified that at the time she asked these questions, Albert Marshall was in custody and had not been advised of his *Miranda* rights.

In *Quarles*, a woman approached two police officers and told them that she had just been raped. She gave the police a description of her assailant and stated that he had just entered a supermarket and was carrying a gun. *Id.* at 651-52. One officer entered the supermarket and saw Quarles run toward the rear of the store. *Id.* at 652. The officer stopped Quarles, searched him, and found that he was wearing an empty shoulder holster. *Id.* After handcuffing Quarles, the officer asked him where the gun was. *Id.* Quarles nodded toward some empty cartons and told the officers that "the gun is over there." *Id.* The officer then recovered the weapon, formally placed Quarles under arrest, and informed him of his *Miranda* rights. *Id.*

■ The United States Supreme Court noted that while in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court "extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police," the Fifth Amendment "does not prohibit all incriminating admissions." *Id.* at 654. The Court held that "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence...." *Id.* at 655. The Court observed as follows:

> The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

*Id.* at 657. The Court held as follows:

> We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers ... in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

*Id.* at 657-58.

■ Similarly, aware that a weapon had been used in the aggravated robbery, Colclasure asked Albert Marshall questions regarding the location of the gun. Colclasure testified that she asked these questions for the safety of the officers, as Albert Marshall may still have had the gun on his person or in the immediate area. Also extant were the same concerns as those in *Quarles* regarding public safety, such as the chance that an accomplice or a student or

passerby in the immediate vicinity of the junior high school might discover the weapon. Thus, as in *Quarles*, "overriding considerations of public safety justifi[ed] the officer's failure to provide *Miranda* warnings before he asked questions devoted to locating the abandoned weapon." *Id.* at 651.

Affirmed.

ROAF, J., and HAYS, S.J., agree.