

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-13-258

| | | |
|---|---|---|
| | | **Opinion Delivered** JANUARY 29, 2014 |
| TIMOTHY LEE HOLT | | APPEAL FROM THE PULASKI |
| | APPELLANT | COUNTY CIRCUIT COURT, |
| | | SEVENTH DIVISION |
| V. | | [NO. CR-10-445] |
| | | HONORABLE BARRY SIMS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**DAVID M. GLOVER, Judge**

Timothy Holt was tried by a jury and found guilty of the offenses of aggravated robbery, aggravated residential burglary, Class B felony theft of property, and Class C misdemeanor fleeing. He was also found to have employed a firearm in committing the felony offenses. He was sentenced as a habitual offender, having four or more prior felony convictions. Holt raises two points of appeal: 1) the trial court erred in denying his motion to suppress, and 2) the trial court imposed an illegal sentence pursuant to Ark. Code Ann. § 16-90-120(a) and (b). We disagree and affirm.

Holt does not challenge the overall sufficiency of the evidence supporting his convictions; therefore, it is only necessary to outline the facts surrounding the retrieval of the gun at issue in his motion to suppress. At the suppression hearing, State Trooper Heath Nelson testified that on December 31, 2009, he became involved in a situation involving



Holt. According to Trooper Nelson, he was patrolling Shackleford Road around Mara Lynn Road in Little Rock when he heard on the police scanner that Little Rock had a home invasion, the suspect was possibly armed, and the suspect was in the same area that Trooper Nelson was patrolling. He said that he traveled north to the area around Terry Elementary School and saw a suspect matching the description that had been given on the scanner—white male, dark clothing, on foot. Trooper Nelson said it was a clear bright day; when the suspect saw him, the suspect tried to lie down; he put his car in park and exited his vehicle; the suspect began to flee; he pursued the suspect on foot; no other officers were on the scene yet; he saw the suspect reach for his waistline and figured he was trying to get rid of something; the suspect tried to jump a fence but was not able to do so; and he apprehended the suspect, put handcuffs on him, and did a quick pat-down.

Trooper Nelson explained that he did not find anything during the pat-down and that he was concerned because the dispatcher had said that the suspect had a weapon. He testified they were close to an elementary school, which his own son attended, and he felt he had to find that gun. He said that he waited until the Little Rock police officers arrived, which was about five minutes from the time he first made contact with the suspect, caught up to him, and put the handcuffs on him. After waiting for more assistance, Trooper Nelson then led the suspect out of the woods, acknowledging that the suspect was in custody at that time. Because he did not work for the Little Rock Police Department, Trooper Nelson stated he did not know the names of the Little Rock officers who came to the scene. With regard to what was said to Holt about the gun, Trooper Nelson reported, "I believe all we said was,

2

'Hey, we know you had a gun. We're by a school. You know, we wouldn't want any kids to get it. Where's the gun?'" He acknowledged that Holt's *Miranda* rights were not read to Holt before Holt showed them where the gun was. Trooper Nelson confirmed that he never heard Holt state that he wanted an attorney.

Counsel made their arguments to the trial court at the conclusion of which Holt's motion to suppress was denied. In arguing that the trial court erred in denying the motion, Holt contends that because he was in custody but was not Mirandized before he led the officers to the gun, he was not adequately informed of his Fifth and Sixth Amendment rights under the Constitution, *i.e.*, his rights against self-incrimination and his right to counsel. He acknowledges the "public-safety" exception to the *Miranda* rule, but contends that it was not properly applied to this situation. We disagree and affirm.

In *Marshall v. State*, 68 Ark. App. 223, 227–28, 5 S.W.3d 496, 498–99 (1999), we concluded that *New York v. Quarles*, 467 U.S. 649 (1984), controlled a similar suppression situation, explaining:

> The United States Supreme Court noted [in *Quarles*] that while in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court "extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police," the Fifth Amendment "does not prohibit all incriminating admissions." *Id*. at 654. The Court held that "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence . . . ." *Id*. at 655. The Court observed as follows:
>
> > The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts



unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

*Id*. at 657.   The Court held as follows:

> We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

*Id*. at 657–58.

> Similarly, aware that a weapon had been used in the aggravated robbery, [Officer] Colclasure asked Albert Marshall questions regarding the location of the gun. Colclasure testified that she asked these questions for the safety of the officers, as Albert Marshall may still have had the gun on his person or in the immediate area. Also extant were the same concerns as those in *Quarles* regarding public safety, such as the chance that an accomplice or a student or passerby in the immediate vicinity of the junior high school might discover the weapon.   Thus, as in *Quarles*, "overriding considerations of public safety justifi[ed] the officer's failure to provide *Miranda* warnings before he asked questions devoted to locating the abandoned weapon." *Id*. at 651.

We find no appreciable differences between the circumstances confronting Trooper Nelson in the instant case and those presenting the officers in *Quarles* and *Marshall*, *supra*, and Holt's reliance upon factors set forth in *New Jersey v. Stephenson*, 796 A.2d 274 (N.J. Super. Ct. App. Div. 2002), do not persuade us differently.   Therefore, we find no error in the trial court's application of the public-safety exception in this case and its denial of Holt's motion to suppress.

For his final point of appeal, Holt contends that "the three five-year (firearm enhancement) sentences of imprisonment that were imposed on Holt pursuant to section 16-90-120(a) & (b) were illegal because that statute no longer existed after the effective date of the Arkansas Criminal Code, which was January 1, 1976." This argument is made for the first time on appeal, which is allowed where contentions of illegal sentences are concerned. However, this issue has been raised and rejected before by our supreme court. *See Smith v. State*, 2013 Ark. 364. We cannot overrule supreme court cases.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Sandra S. Cordi*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.